|   |   |   |
|---|---|---|
| 1 | UNITED STATES DISTRICT COURT | |
| 2 | EASTERN DISTRICT OF CALIFORNIA | |

| | | |
|---|---|---|
| DESIREE MCDOUGAL, for WALTER JASON INMAN (deceased), | Case No. 1:16-cv-00962-EPG | |
| Plaintiff, | FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT | |
| v. | | |
| COMMISSIONER OF SOCIAL SECURITY, | | |
| Defendant. | | |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision of the Commissioner of the Social Security Administration regarding his applications for supplemental security income and disability insurance benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit.

At the hearing on November 9, 2017, the Court heard from the parties and, having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, finds as follows:

For the reasons announced by the Court on the record at the conclusion of the parties' oral argument on November 9, 2017, the Court finds that the decision of the Commissioner of Social Security should be reversed and the case should be remanded for award of benefits.

Plaintiff Desiree McDougal brings this Complaint for review of a final decision of the Commissioner of Social Security on behalf of her deceased brother Walter Jason Inman, who committed suicide on October 5, 2015. Shortly after her brother's death, Ms. McDougal filed for substitution of party upon death of claimant and testified in support of his claim at the administrative hearing on December 9, 2015.

The ALJ issued a decision denying Inman's application for disability insurance benefits and supplemental security income on January 27, 2016. At step two of the five step disability

1

analysis, the ALJ found severe impairments of "hemorrhoids; plantar fasciitis secondary to a pes plano valgus deformity; bilateral knee degenerative joint disease, and patellar spur and patellar tendinosis; quadriceps enthosopathy; chronic constipation; and major depressive disorder." AR 20. Based on Inman's impairments, the ALJ issued a residual functional capacity ("RFC") assessment finding Inman could "lift and carry 50 pounds occasionally and 25 pounds frequently, and stand, sit, and walk up to 6 hours in an 8-hour workday. He was capable of performing simple repetitive routine tasks, with limited public contact." AR 22. At step five, a vocational expert testified at the administrative hearing that there were jobs in significant numbers in the national economy for someone with Inman's RFC, and therefore, he was not disabled. AR 26.

Regarding the testimony of Ms. McDougal, the ALJ stated:

> Ms. McDougal is partially credible. The objective medical evidence shows the claimant weighed 184 pounds in January 2008, and 176 in March 2015. This not a significant weight change. Ms. McDougal had testified his hemorrhoid problem had caused considerable weight loss (Exhibits 2F, p. 5; 11F, p.2). In addition, the evidence does not support the extreme exertional and postural limitations asserted by Ms. McDougal. The claimant was [caring] for his terminally ill father, which would have been both physically and emotionally demanding.

AR 26.

The ALJ failed to provide a relevant reason for discounting Ms. McDougal's testimony.[1] *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) ("Consequently, '[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness.'" [*Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)]; [*Lewis v. Apfel*, 236 F.3d 503, 511(9th Cir. 2001)]").

The first purported discrepancy regarding Inman's actual weight was not pertinent to Ms. McDougal's credibility. Ms. McDougal merely gave her estimates as to her brother's weight at different points in time, which were roughly accurate. AR 39 ("Yes, he's lost weight in the last four years [2011-2015]; he used to weigh about 190"). Furthermore, her testimony was ultimately correct as to her main point -- that her brother had lost weight prior to his death.

---

[1] In fact, the reasoning set forth for the credibility finding by the ALJ is so lacking of any rational basis that it creates the suggestion that the reasoning was manufactured in order to reach a preferred legal conclusion. This was very troubling to the undersigned judge.

2

Moreover, the ALJ presented no evidence that Ms. McDougal was incorrect given that the last recorded weight of claimant was many months before his death, and Ms. McDougal testified that he lost weight during that time period.

Likewise, the ALJ's asserted basis --that Inman caring for his terminally ill father would have been physically and emotionally demanding—is actually contrary to the record. Notably, the ALJ does not provide any evidence in support of her claim that the Claimant cared for his terminally ill father. In fact, the statement is inconsistent with Ms. McDougal's testimony, who very clearly testified that Inman did not provide care for their father because Inman was having great difficulty taking care of himself.[2]

Last, the ALJ stated (without citation to the record) that "the evidence does not support the extreme exertional and postural limitations asserted by Ms. McDougal." At oral argument, the Commissioner argued that no medical source opinion opined that Inman would need to take unscheduled restroom breaks for hours at a time and there was support that Inman would be able to stand, sit, and walk up to 6 hours in an 8-hour workday.

The medical evidence in the record supported Ms. McDougal's testimony. There is no dispute that Inman actually suffered from severe constipation issues. In fact, the ALJ agreed, finding "chronic constipation" as a severe impairment significantly limiting Inman's ability to perform basic work activities. Ms. McDougal testified that, due to his bowel condition, her brother would need to use the restroom once or twice a day for a long period of time (2-3 hours). AR 58. When he used the restroom, her brother would need assistance cleaning himself as a result of diarrhea and bleeding during his bowel movements.

The ALJ did not cite to any contradictory medical evidence regarding the durational limitation. There was no medical opinion in the record that considered or evaluated the possible duration of Inman's bowel movements, and no medical provider performed this type of examination or evaluation. In the absence of medical evidence, support for the durational

---

[2] AR 44 ("He wanted to be there for my dad for the last – and not be there in the way of, like, helping him, but being by his side… I had to bring in someone from the [Veterans' Administration] to help me out because I could not rely on my brother doing – not that he didn't want to help, he would just be so depressed about himself on top of everything else that he might not get out of bed for a few days.").

3

limitation could have only come from the relevant testimony. Because the ALJ did not provide germane reasons for discrediting Ms. McDougal, her testimony is credited as true.[3]

For these reasons and those stated on the record during argument, the Court finds that the decision of the Commissioner of Social Security should be reversed and the case should be remanded for award of benefits. *See Garrison v. Colvin*, 759 F. 3d 995, 1021-22 (9th Cir. 2014) (providing that remand for award of benefits is appropriate where there is no need to further develop the record, the ALJ failed to provide legally sufficient reasons for rejecting evidence, the ALJ would have to find disability if the improperly discredited evidence were credited as true, and record afforded no reason to doubt that claimant was disabled).

Here, when the discredited evidence is credited as true, jobs would not exist in significant numbers in the national economy that Inman could perform. AR 67 ("Q: Okay. Hypothetical #3. Due to the need to take unscheduled breaks at will, if we were to add that this person will be working off take 10% of the workday to the previous hypotheticals would there be any work? A: No work, Your Honor.").

Accordingly, the Court GRANTS Plaintiff's appeal from the administrative decision of the Commissioner of Social Security and the case is remanded to the Social Security Administration for calculation and award of benefits. The Clerk of the Court is DIRECTED to enter judgment in favor of Plaintiff and against Defendant Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **November 13, 2017**  /s/ Eric P. Grosjean
UNITED STATES MAGISTRATE JUDGE

---

[3] *See Page v. Comm'r of Soc. Sec. Admin.*, 304 F. App'x 520, 522 (9th Cir. 2008).